UNITED STATES of America,
Plaintiff-Appellee,

v.

James Stephen MEYER (85–5712), Edward Lynn McIntosh (85–5717), Noah Johnson, Jr. (85–5724), Defendants-Appellants.

Nos. 85–5712, 85–5717 and 85–5724.

United States Court of Appeals,
Sixth Circuit.

Argued July 28, 1986.

Decided Oct. 8, 1986.

Wilbur M. Zevely, argued, Florence, Ky. (Court-appointed), Jon Larson, argued, Lexington, Ky. (Court-appointed), Allan W. Holbrook (lead counsel), argued (Court-appointed), Holbrook, Gary, Wible & Sullivan, Owensboro, Ky., for defendants-appellants.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John M. Compton, argued, for plaintiff-appellee.

Before MERRITT and GUY, Circuit Judges, and BALLANTINE, District Judge*.

MERRITT, Circuit Judge.

This is a consolidated appeal, by three defendants, from several convictions arising out of the attempted sale of cocaine to federal drug enforcement agents. Numerous issues are raised, all but one of which involve the application of well-settled law. We publish this opinion because in Part II. B. we deal with the issue of whether a drug offense "by its nature" is a "crime of violence" within the meaning of 18 U.S.C. §§ 16, 924, a firearms penalty enhancement statute which this court is interpreting for the first time.

Appellants Meyer, Johnson and McIntosh were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and aiding and abetting in the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Johnson and McIntosh were convicted of carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924 and 18 U.S.C. § 16. Additionally, Johnson was convicted of three counts of using a communication facility to facilitate distribution of cocaine in violation of 21 U.S.C. § 843(b). We affirm in part and reverse in part.

### I.

On October 30, 1984, Appellants, along with several others, were arrested by DEA agents following the "sale" of one pound of cocaine for $28,000.00. Approximately one week earlier the undercover agents met with Johnson and McIntosh to discuss the possibility of a sale. Edward Hendricks (a DEA informant) had introduced the agents to Johnson and McIntosh and helped to arrange the deal. Evidence introduced at trial revealed that prior to October 30, Hendricks, the agents and appellants exchanged several phone calls during which the details of the sale were discussed.

At 9:30 P.M. on October 30, Johnson and McIntosh met DEA agent Price at Jerry's Restaurant in Lexington, Kentucky. Meyer waited outside in the parking lot in his father's Cadillac. Apparently, the agreement was that the money would be given to the persons waiting in the car. Johnson was arrested in the restaurant. He was carrying a .38 caliber Smith & Wesson revolver. McIntosh was arrested in the parking lot. The government claims it took a nine millimeter semi-automatic pistol from him at the time of arrest. Meyer was arrested at the car. DEA agent Albanese testified that as he (Albanese) approached the car, he said to Meyer "Here's the money." Meyer then asked him "Is it all there?"

### II.

### A.

Appellants raise several issues on appeal. First, Meyer claims the trial court violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) by granting a continuance under 18 U.S.C. § 3161(h)(3)(A) and (h)(8)(A) to the government.

■ The Speedy Trial Act requires that a defendant be tried within 70 days of the filing of the information or indictment, or of the date the defendant first appears in the court where the charge is pending—whichever occurs later. Here, the parties agree that Meyer's indictment on November 28, 1984 triggered his 70 day period. Trial was originally set for February 4, 1985. However, shortly before this date, the trial court was told that agent Albanese could not appear because he would be away on his honeymoon. The district court found Albanese, who was married on February 2, had made extensive wedding and honeymoon plans and expended large sums of non-refundable money in connection with these plans. The parties all agreed that Albanese was an essential witness. We agree with the district court that Albanese

* The Honorable Thomas A. Ballantine, Jr., Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

was unavailable under 18 U.S.C. § 3161(h)(3)(A), and that the "ends of justice" were best served by granting a continuance. 18 U.S.C. § 3161(h)(8)(A). It would have been unreasonable to require Albanese, who was about to be married, to cancel all his plans at the last minute. The parties settled on April 8, 1985 as the next mutually convenient date after February 4. Since the continuance was proper, the period between February 4 and April 8 was excludable.

■ Meyer next claims there was insufficient evidence to convict him of conspiracy and aiding and abetting under 21 U.S.C. § 846 and 18 U.S.C. § 841(a)(1) and (a)(2). It is Meyer's position that he knew nothing of the drug sale and was merely waiting with his father's car in order to keep an eye on it as he had promised he would.

In deciding whether the evidence is sufficient, we are required to view it in the light most favorable to the government. *Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Here, the evidence, while not overwhelming, was clearly sufficient to link Meyer with the conspiracy and with aiding and abetting. DEA Agent Price testified that Johnson told him the people in the car "were there to count the money and that's all." (Appellee's Brief, at 37.) The record also shows that Johnson testified that the people in the Cadillac "were supposed to count the money and then leave with it." (Appendix, 199.) Agent Albanese testified that as he approached the car, Meyer asked him if all the money was there. (Appendix, 107).

This testimony flatly contradicts Meyer's contention that he was unaware of the drug sale, and is sufficient to enable a reasonable person to find that Meyer conspired and aided and abetted in the illegal distribution of cocaine.

### B.

■ Johnson and McIntosh both argue that the district court erred in failing to dismiss the charge of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Their combined attack on § 924(c) consists in asserting that (1) the statute is void for vagueness; (2) a drug offense is not "a crime of violence"; and (3) there was insufficient evidence to show firearms were carried. Because we agree with Appellants that drug offenses are not covered by § 924(c), we do not address their other claims.

18 U.S.C. § 924(c) states:

Whoever, during and in relation to any crime of violence, including a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device, for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years..... No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein.

18 U.S.C. § 16(b) defines "crime of violence" as

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The United States takes the position that drug trafficking is, *by its nature*, violent. The government argues that firearms are simply a "tool" of the drug trade. This appears to be an issue of first impression in this circuit; however, the Second Circuit recently had occasion to consider whether § 924(c) applies to drug offenses, and concluded it does not. In *U.S. v. Diaz*, 778 F.2d 86 (2d Cir.1985), that court held:

Section 924(c) applies to an offense that "by its nature" involves a substantial risk of physical force. While the traffic in drugs is often accompanied by violence, it does not by its nature involve substantial risk that physical violence will be used. An individual selling drugs is committing a felony whether the pur-

chaser is a friend, relative or stranger, but the sale of itself need not involve a substantial risk of physical force. Such transactions are often wholly consensual, and do not necessarily present threats of physical harm to any person or property. 778 F.2d at 88.

The government urges us not to follow the Second Circuit. However, the argument made by the United States is unpersuasive because it would make any felony a "crime of violence" simply because a firearm was present. Had Congress so intended, it could easily have applied § 924(c) to all felonies. It did not, and we decline to create a conflict in the circuits on this issue.

■ Johnson and McIntosh's next assignment of error concerns the trial court's refusal to permit four witnesses to testify that they had been entrapped by Hendricks, the government informant. Appellants, apparently, wished to show that Hendricks had previously gone to great lengths to persuade others to commit criminal acts. The government points out that Appellants had ample opportunity to cross-examine Hendricks and attack his credibility.

Rule 608(b) of the Federal Rules of Evidence provides that:

specific instances of conduct of a witness for the purpose of attacking or supporting his credibility may not be proved by extrinsic evidence.

We see no reason to deviate, in this instance, from the normal application of this rule. Any evidence of Hendricks' dealings with other convicted felons is, at most, remotely relevant. The predisposition of others to commit a crime is wholly irrelevant to the predisposition of Johnson and McIntosh.

Appellants argue that the testimony should have been allowed in order to show bias under *U.S. v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). In *Abel*, the Supreme Court held that evidence of gang membership by certain witnesses was admissible to show bias because gang members swore to lie, cheat, steal and kill to protect other members. We read the rule announced in *Abel* to apply where the extrinsic testimony relates to beliefs of the witness or to preexisting relationships between the witness and the defendant which are of a nature likely to result in bias. We do not agree with Appellants that *Abel* stands for the proposition that all extrinsic evidence of possible bias, no matter how irrelevant, is admissible. As the Court in *Abel* made clear, the admissibility of extrinsic evidence remains a matter for the discretion of the trial court. 105 S.Ct. at 470. Here, we are persuaded that the district court did not abuse its discretion in excluding this remotely relevant evidence.

McIntosh and Johnson (who incorporates McIntosh's argument on this subject by reference) also contend that the District Court should have directed a verdict of acquittal, or granted judgment n.o.v., on the basis of entrapment. Their argument is that the government failed to show predisposition to commit the offenses.

■ It is the duty of the trial judge to determine whether there is sufficient evidence of entrapment to allow the issue to go before the jury. Only then does the burden shift to the government to prove predisposition. *United States v. Jones*, 575 F.2d 81, 83–84 (6th Cir.1978). Here, there was no evidence presented or proffered to show the presence of government pressure on McIntosh or Johnson, so the trial court acted properly in not allowing the issue to go to the jury. The government was thus under no burden to present evidence as to predisposition. *See Jones, supra.*

Even had there been such a burden, however, it would easily have been satisfied. Evidence already in the record clearly demonstrates the defendants' predisposition to commit the crimes charged, and the prior criminal record of McIntosh makes his claim particularly weak. We need not address such matters, however, as we find that the trial court acted correctly.

The defendants also insist that they may not be convicted and sentenced for both the drug conspiracy charged in the indictment

and substantive drug offenses which, as charged, permits conviction for aiding drug distribution. The law is well-settled that conspiracy is a separate crime from the substantive offense no matter whether the defendant is convicted as a principal or as an aider and abettor.

### III.

The judgment of the district court is affirmed in all respects except for the convictions of Johnson and McIntosh for carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The case is remanded with instructions to vacate the convictions on these counts and modify the sentences appropriately.