UNITED STATES of America,
Plaintiff–Appellee,

v.

Bobby L. KENNEDY,
Defendant–Appellant.

No. 89–3399.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 30, 1989.

Decided Jan. 9, 1990.

Catherine H. Killam (argued), Office of the U.S. Atty., Toledo, Ohio, for plaintiff-appellee.

Martin E. Mohler (argued), Mohler, Bingle & Henderson, Toledo, Ohio, for defendant-appellant.

Before: MILBURN and GUY, Circuit Judges; and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant-appellant Bobby Lee Andrew Kennedy appeals the district court's upward departure from the United States Sentencing Guidelines in setting his sentence for two counts of armed robbery. For the reasons that follow, we vacate the sentence imposed and remand for resentencing.

## I.

### A.

On May 1, 1989, Kennedy was charged in an information with two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). He was arraigned, pleaded guilty to both counts, and proceeded to sentencing on May 1, 1989, having previously discussed his options with counsel.

Earlier, on February 14, 1989, Kennedy had consented to a presentence investigation and to the district court's use of the presentence investigation report. The district court reviewed the presentence investigation report and, although acknowledging that the recommended range under the guidelines was 77 to 96 months, departed upward from the guidelines and imposed a sentence of 15 years on each charge to be served concurrently. This timely appeal followed.

### B.

Before imposing sentence, the district judge asked Kennedy whether he had reviewed the presentence investigation report and whether it was accurate. Kennedy answered in the affirmative to both questions. The presentence investigation report was incorporated into the record, and

most of the information that follows comes from the report.

On August 10, 1988, at approximately 11:53 a.m., Kennedy and another man entered a bank at 4773 Glendale Avenue, Toledo, Ohio, and robbed the bank of $9,422.20. Kennedy wore a mask to conceal his identity and used a pistol to scare the tellers into complying with his demands. The two men escaped by automobile. On September 9, 1988, at approximately 10:55 a.m., Kennedy robbed the same bank at gunpoint of $2,614.00.

Kennedy's criminal history began at age fourteen, when he was charged with carrying a concealed weapon. Upon being adjudged delinquent, he was placed on probation and detention by a juvenile court. At age sixteen, Kennedy was adjudged delinquent on merged charges of possession of marijuana and aggravated assault (reduced to simple assault).

At seventeen years of age, Kennedy was convicted of armed bank robbery and sentenced to fifteen years imprisonment. He was paroled approximately three years later and several times afterward, but parole was invariably revoked for violation of parole conditions. On December 13, 1980, Kennedy was convicted of theft of property. On October 14, 1982, he was convicted of carrying a pistol without a license, carrying a concealed weapon, and violation of the Georgia Controlled Substance Act. On April 9, 1984, Kennedy was convicted of violating a law prohibiting a convicted felon's possession of a firearm. On December 2, 1985, he was convicted of disorderly conduct, battery and giving false information to a police officer. One week later, he was convicted for possession of a dangerous weapon.

At the time of sentencing, Kennedy was under indictment on the following charges: July 1, 1988—armed robbery and murder in Columbus, Georgia; April 14, September 8, and September 16, 1988—three counts of armed robbery with a firearm specification; September 17, 1988 (CR 88–6773)—aggravated burglary, carrying a concealed weapon and drug abuse.

Under "factors that may warrant departure," the presentence investigation report stated:

> The defendant's prior criminal record, which commenced when he was fourteen years of age and has continued almost unabated since, coupled with the serious nature of the offenses of which he has been convicted, might well be construed as a basis for departing upward from the guideline range of imprisonment.

At sentencing, the district court proposed to accept the guidelines recommendation [1] but "reserve, subject to allocution, its decision as to departure." Mr. Mohler, counsel for Kennedy, asked for the "sentence to be imposed forthwith." Mohler asked for the sentence to be set within the guidelines range of 77 to 96 months after pointing out to the court that "the report [was] in great detail and the score computed under the guidelines [took] into account Mr. Kennedy's past history."

After giving Kennedy a chance to speak, the district court stated:

> All right. In passing sentence, the Court has to consider various factors: incapacitation, punishment, deterrence, and rehabilitation.
>
> Mr. Kennedy, I don't know why but unless it's your drug habit, *you had a long history of violation of the law . . . .*
>
> The Court has read your record and it is extensive. *The Court has to consider*

---

1. Based upon the charged crime, the amount of money taken, and the use of a firearm during the robberies, the presentence investigation report indicated an offense level of 22 for each robbery. After adding two points for a multiple count adjustment and subtracting two points for acceptance of responsibility, Kennedy's total offense level was determined to be 22.

   Kennedy's criminal history category was set at V based upon criminal history points of 12. Nine points came from three of Kennedy's prior convictions. Two points were added because the bank robberies were committed while Kennedy was on parole. The last point was added because the robberies were committed less than two years following Kennedy's release from prison.

   Under the guidelines, Kennedy's offense level and his criminal history category combined to produce a recommended sentence range of 77 to 96 months. These calculations have not been challenged.

*incapacitation at this point because parole, probation, rehabilitation just has [sic] not worked in your case* and it's unfortunate.... As a result of this, *the Court feels that this is a case where the Court should depart from the guidelines.* (Emphasis added).

The court then sentenced Kennedy to fifteen years on each count to be served concurrently. Later, counsel for the government asked the court about the departure:

> If I understand your statement of a support of the departure above the guidelines if it is your opinion, Your Honor, and your finding, is it not, that the criminal history in the report and the calculation under the straight guidance does not adequately take into account this particular offender's proclivity for violating the laws.

The court responded, "Yes, I feel this is one of those cases—and I'm sorry about this, Mr. Kennedy—where *I think* even *in your best interest and,* of course, *the best interest of society that you need an extended period of incapacitation."* (Emphasis added).

The issues presented for appeal [2] are: (1) whether the district court's statements of reasons for its departure were inadequate; and (2) whether the district court should have first considered sentencing Kennedy under the next higher criminal history category before otherwise departing from the guidelines.

## II.

### A.

Pursuant to the Sentencing Reform Act of 1984, appellate review of a district court's decision to depart from the guidelines is limited. 18 U.S.C. § 3742(e). Under the act, we affirm a departure unless it is "unreasonable." *Id.* We consider whether "there exists an *aggravating* or *mitigating* circumstance of a kind, or to a

degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b).

We defer to the district court's factual findings unless they are clearly erroneous, and we "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). *See also United States v. Perez,* 871 F.2d 45, 47 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). However, our deference depends upon the district court's providing a reasoned statement of "the specific reasons for its departure in language relating to the Guidelines...." *United States v. Rodriguez,* 882 F.2d 1059, 1066 (6th Cir.1989).

### B.

Kennedy argues first that the district court's statement of reasons for departing from the sentencing guidelines was inadequate. Kennedy relies principally upon the following language from the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(c)(2) (emphasis added):

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and if the sentence— ...
>
> (2) is not of the kind, or is outside the range [of the sentencing guidelines] the *specific reason* for the imposition of a sentence different from that described.

This court has interpreted the language of section 3553(c)(2) to mean

> [w]here a district court chooses to depart, "a short clear written statement or a reasoned statement from the bench" must support the departure. The court is not required to "incant the specific language used in the guidelines," but should "identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for de-

**2.** Since we answer the stated issues affirmatively and remand for resentencing, we need not consider Kennedy's additional contentions that his criminal history was adequately taken into account under the guidelines, that the departure was unreasonable and that the departure was impermissible because of the court's failure to give notification of its intent to depart from the guidelines.

parture...." If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion.

*Rodriguez*, 882 F.2d at 1066 (citations omitted).

It is obvious from the district court's statements that the reason it departed from the guidelines was Kennedy's "long history of violation of the law." However, the court neither articulated that reason in language relating to the guidelines, nor connected the criminal record to the permissible grounds for departure.[3] The guidelines specifically provide for sentence enhancement based upon the defendant's criminal history. United States Sentencing Commission, *Guidelines Manual*, ch. 4 (hereinafter *"Manual"*). It is only when "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, [that] the court may consider imposing a sentence departing from the otherwise applicable guideline range." *Id.* § 4A1.3. The district court's references to Kennedy's extensive criminal record and failures of rehabilitation fail to explain how the guideline range was inadequate.

We find *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989), to be instructive. The government cites *Wells* for the proposition that all the district court's statement needs to do is provide for a meaningful review. What the government fails to point out is that the district court's statement in *Wells* was even more detailed than the court's statement in this case, and yet

the *Wells* court reversed and remanded for a more complete statement.[4]

In *Wells*, the reviewing court looked for more explanation concerning the specific aspects of the defendant's criminal history that the court found inadequately represented in the guideline ratings. *Id.* In the present case, the district court not only failed to identify the specific criminal activity that justified a finding that the guidelines under-represented Kennedy's criminal history, but also failed to state that the guidelines did, indeed, under-represent his criminal history.

Kennedy correctly argues some of the reasons for requiring a clear statement from the sentencing court. First, the Sentencing Commission looks to the district courts for feedback concerning factors and circumstances not adequately taken into account by the guidelines. *Manual* Ch. 1 at 1.7. Secondly, to require the district court to clarify and publish its reasoning helps to assure the uniformity that was sought in the Sentencing Reform Act of 1984. *See id.* at 1.2; 18 U.S.C. § 3553(a)(6). Finally, a clear statement from the district court assures that the appeal process provided by the Sentencing Reform Act works properly in that both counsel and the reviewing court will be able to challenge and/or evaluate the district court's actions. *See Rodriguez*, 882 F.2d at 1066.

### C.

■ In this case, the district court's departure beyond the next higher criminal history category[5] of VI gives us reason to examine the court's stated reasons for departure more closely. Kennedy argues

---

3. The district court did acknowledge with a "yes" the prosecutor's statement that "the criminal history in the report and the calculation under the straight guidelines [did] not adequately take into account this particular offender's proclivity for violating the laws." We note that the government offers no authority to show that the prosecutor's statement could pass for a "reasoned statement from the bench." In fact, neither party addressed the issue in their briefs. Under these circumstances, we decline to hold that the prosecutor's statements fulfilled the statutory requirements.

4. The district court had stated:

The court concludes that the defendant's criminal history category significantly underrepresents the seriousness of the defendant's criminal history, and the seriousness of the defendant's criminal history more closely resembles that of defendants of a category VI criminal history.... *Wells*, 878 F.2d at 1233.

5. Kennedy's sentence range for an offense level of 22 and a criminal history category of VI would have been 84 to 105 months as opposed to 15 years. *Manual*, Sentencing Table, p. 5.2.

that reference to the next higher criminal history category is mandatory and correctly points out that other circuits have held that the guidelines compel a sentencing court to look to the next higher criminal history category before otherwise departing from the guidelines.[6] *United States v. Lopez*, 871 F.2d 513, 515 (5th Cir.1989); *United States v. Cervantes*, 878 F.2d 50, 54 (2d Cir.1989); *United States v. Miller*, 874 F.2d 466, 470–71 (7th Cir.1989).

To require the sentencing court to look to the next higher criminal history category as a reference before otherwise departing from the guidelines serves to "order and standardize the departure process without removing a judge's discretion to impose an alternative sentence." *Cervantes*, 878 F.2d at 54. We find the position of the other circuits to be well reasoned. Thus, we hold that a sentencing court must first look to the next higher criminal history category before otherwise departing from the guidelines.

Having reached this conclusion, we note that other circuits have recognized that in some cases involving defendants with low criminal history scores, [the sentencing court] may be justified to impose a sentence reflecting a much higher criminal history category or to go beyond the range corresponding to the highest category VI. However, in such cases, *the sentencing judge should state definitively that he or she has considered lesser adjustments of the criminal history category and must provide the reasons why such adjustments are inadequate.*

*Lopez*, 871 F.2d at 515 (emphasis added); *see Miller*, 874 F.2d at 471; *Cervantes*, 878 F.2d at 54 ("It is necessary ... that the court clearly identify any aggravating factors and specify its reasons for utilizing a particular criminal history category.") In this case, the district court did not demonstrate that it looked to the next higher criminal history category, nor did it demonstrate that it found the sentence imposed by the next higher criminal history category too lenient.

In sum, we find two closely intertwined errors by the district court. First, it failed to articulate its reasons for departing from the guidelines in language relating to the guidelines. Second, it departed beyond the next higher criminal history category without demonstrating either that it first looked to the next higher criminal history category for guidance or that it found the sentence under the next higher criminal history category too lenient.

### III.

Accordingly, for the reasons stated, the sentence imposed is VACATED, and this case is REMANDED for resentencing with directions to the district court to set forth the specific reasons for its departure from the Sentencing Guidelines and to look to the next higher criminal history category as a reference before otherwise departing upward.

---

6. The basis for holding that a sentencing court must look to the next higher criminal history category before otherwise departing from the guidelines is found in the following statement by the Sentencing Commission:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a category IV criminal history to guide its departure.

*Manual* § 4A1.3.